UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22241-BLOOM/Louis

RONNA RUBEN,

     Plaintiff,

v.

SILVERSEA CRUISES, LTD. (INC.)
and MEDIPORT SERVICES,

     Defendants.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Silversea Cruises, Ltd.'s ("Silversea") Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. [32] ("Silversea's Motion"); Defendant Mediport Services' ("Mediport") Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. [35] ("Mediport's Motion"); Plaintiff Ronna Ruben's ("Plaintiff") Motion for Leave to Conduct Jurisdictional Discovery, ECF No. [39] ("Motion for Jurisdictional Discovery"); and Plaintiff's Motion for Leave to File Third Amended Complaint, ECF No. [44] ("Motion to Amend"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, Silversea's Motion is denied; Mediport's Motion is granted; Plaintiff's Motion for Jurisdictional Discovery is denied; and Plaintiff's Motion to Amend is denied.

## I.   BACKGROUND

On May 31, 2019, Plaintiff initiated the instant personal injury action against Silversea only for injuries sustained during a bicycle excursion in Corsica, France. ECF No. [1]

("Complaint"). On June 28, 2019, Plaintiff amended her Complaint to add Mediport as a Defendant. ECF No. [7] ("First Amended Complaint").[1] On October 11, 2019, this Court granted in part and denied in part Silversea's Motion to Dismiss the First Amended Complaint, and granted Plaintiff leave to amend, ECF No. [28], which Plaintiff did on October 18, 2019, ECF No. [29] ("Second Amended Complaint").

In the Second Amended Complaint, Plaintiff alleges that she was a passenger on one of Silversea's cruise ships — the Silver Muse — during an eight-day voyage beginning on July 8, 2018. *Id.* ¶ 16. On July 10, 2018, Plaintiff and her husband participated in a bicycle excursion that consisted of a guided tour of Bastia, Corsica, France. *Id.* ¶ 19. Plaintiff booked this excursion through one of Silversea's representatives in advance of sailing and, in doing so, Plaintiff relied on the fact that Silversea held the operator of the excursion out as its agent. *Id.* ¶¶ 20-21. Mediport was the tour operator of the bicycle excursion Plaintiff participated in and Mediport exercised control over the tour guides operating the excursion. *Id.* ¶¶ 13-14. Plaintiff alleges that Silversea was "responsible for supervising and/or vetting and/or screening and/or selecting the [excursion] tour operator," and it exercised control over the tour guides and the operation of the excursion. *Id.* ¶ 22. In booking this excursion, Plaintiff believed, based on Silversea's representations, that it consisted of "a leisurely bike tour on flat surfaces to view the scenery and natural preserve of the surrounding area." *Id.* ¶ 24.

Upon commencing the excursion, Plaintiff discovered that, rather than being a leisurely bicycle tour on a manual bike, the excursion involved riding and operating an electric bicycle, which Plaintiff was unfamiliar with and had never ridden, along "dangerous, high-trafficked roads without bicycle lanes at unreasonably dangerous speeds." *Id.* ¶ 25. Plaintiff alleges that, at one

---

[1] The Court will collectively refer to Silversea and Mediport as "Defendants."

point during the excursion, the group had to ride on a two-lane highway with a speed limit of 110 kilometers per hour. *Id.* Moreover, the tour guides did not provide participants with any instruction on how to operate the electric bicycles, nor did they size the bikes to each rider before beginning the tour. *Id.* In addition, none of the tour guides spoke English and, during the tour, the rear guide separated from the excursion group, thus leaving the group with only a single guide leading in the front. *Id.*

During the excursion, Plaintiff was informed by a Silversea employee — who accompanied the group on the excursion to observe the performance of the excursion operator — that Silversea had not previously vetted the tour operator and that it was Silversea's first time conducting the excursion using this tour operator. *Id.* ¶ 26. This same Silversea employee had to act as an English interpreter for the guides during the excursion. *Id.* Plaintiff alleges that she and numerous other excursion participants expressed concerns about their safety to Silversea's employee and complained that they did not want to finish the tour because they were concerned that they would be injured. *Id.* ¶ 27. The Silversea employee acknowledged to Plaintiff "that the tour was not being conducted in a safe manner and was sufficiently concerned that passengers would suffer injuries that she contacted the [Silver Muse] prior to the end of the tour" and requested that a bus come pick the passengers up. *Id.* After contacting the cruise ship, Silversea's employee indicated that Plaintiff would need to continue the excursion until the group reached a better location because the bus was unable meet them at their current location. *Id.* Shortly thereafter, Plaintiff was thrown from her electric bike, sustaining injuries to her mouth, face, leg, elbow, and shoulder. *Id.* ¶ 28.

Plaintiff's Second Amended Complaint asserts seven counts: Count I – Negligence – Negligent Hiring (against Silversea); Count II – Negligence – Negligent Misrepresentation (against Silversea); Count III – Negligence – Failure to Warn (against Silversea); Count IV –

3

Negligence – Apparent Agency (against Silversea); Count V – Negligence (against Mediport); Count VI – Negligence – Negligent Training (against Mediport); and Count VII – Negligence – Negligent Supervision (against Mediport). *See generally id.*

On November 13, 2019, Silversea filed its Motion to Dismiss pursuant to Rule 12(b)(6), requesting that this Court dismiss Counts I, II, III, and IV of Plaintiff's Second Amended Complaint with prejudice for her failure to state a claim. ECF No. [32]. Plaintiff filed her Response in Opposition to Silversea's Motion to Dismiss, ECF No. [33], to which Silversea filed a Reply, ECF No. [34]. Similarly, on December 9, 2019, Mediport filed its Motion to Dismiss premised on a lack of personal jurisdiction and on *forum non conveniens*. ECF No. [35]. Plaintiff filed her Response in Opposition, ECF No. [38], and Mediport filed its Reply, ECF No. [41].

Furthermore, on January 13, 2020, Plaintiff filed her Motion for Jurisdictional Discovery, requesting the Court's permission to conduct jurisdictional discovery as to Mediport, based on Mediport's submission of a declaration by Jacques Bindinelli in support of its Motion to Dismiss, which alleged that Mediport has little to no ties to Florida. *See* ECF No. [39]. Mediport filed its Response opposing Plaintiff's Motion for Jurisdictional Discovery, ECF No. [42], and Plaintiff filed her Reply, ECF No. [43].

On January 28, 2020, Plaintiff filed her Motion to Amend, seeking leave to amend her Second Amended Complaint to add an additional count against both Defendants for third-party beneficiary breach of contract, based on information Plaintiff obtained during the course of discovery. *See* ECF No. [44]; ECF No. [44-1] ("Third Amended Complaint"). Specifically, Plaintiff explains that, on January 3, 2020, Silversea served supplemental discovery responses to Plaintiff's August 28, 2019, request for production. ECF No. [44] at 2. Included in these supplemental discovery responses was a document titled "2018 Ground / Tour Operator

Guidelines," ECF No. [44-3] ("Tour Operator Guidelines"), which was incorporated by reference into an agreement between Mediport and Silversea, ECF No. [44] at 2. Plaintiff contends that the Tour Operator Guidelines contains language confirming her status as a third-party beneficiary to Defendants' contract, which warrants granting Plaintiff leave to file a Third Amended Complaint. *Id.*; *see also* ECF No. [44]. Pursuant to this Court's Order Setting Trial and Pre-trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge, the deadline to file any amended pleadings in this case was October 11, 2019. ECF No. [13] ("Scheduling Order"). Defendants each filed individual Responses in Opposition to Plaintiff's Motion to Amend, *see* ECF Nos. [46] & [47], to which Plaintiff filed a Reply, ECF No. [50].

The Court will address each motion in turn below.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(2) Motion & Motion to Conduct Jurisdictional Discovery

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant

challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

"Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Commc'n Corp.*, 902 F.2d at 855. If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

"Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Gibson v. NCL (Bah.) Ltd.*, No. 11-24343-CIV, 2012 WL 1952670, at *2 (S.D. Fla. May 30, 2012) (citing *Meier ex rel. Meier*, 288 F.3d at 1269) ("*Gibson I*"). "But, when the plaintiff offers no competent evidence to the contrary, a 'district court may find that the defendant's unrebutted denials [are] sufficient to negate plaintiff's jurisdictional allegations.'" *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019) (citing *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013)) ("*Serra-Cruz I*").

Additionally, because "the extent of the long-arm statute is governed by Florida law, 'federal courts are required to construe it as would the Florida Supreme Court.'" *Cable/Home*

*Commc'n Corp.*, 902 F.2d at 856 (quoting *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983)). "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of its intermediate courts." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Polskie Linie Oceaniczne*, 795 F.2d at 970). "[T]he long-arm statute must be strictly construed, and any doubts about the applicability of the statute are resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007) (citing *Seabra v. Int'l Specialty Imp., Inc.*, 869 So. 2d 732, 733 (Fla. 4th DCA 2004)).

The Court of Appeals for the Eleventh Circuit has "indicate[d] that jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction." *Exhibit Icons, LLC v. XP Companies, LLC*, No. 07-80824-CIV, 2008 WL 616104, at *2 (S.D. Fla. Mar. 3, 2008) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) (holding that such jurisdictional discovery is not entirely discretionary, but rather, is at least partly mandatory); *Chudsama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Resolution of a pretrial motion that turns on findings of fact — for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) — may require some limited discovery before a meaningful ruling can be made."); *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)); *see also ACLU v. City of Sarasota*, 859 F. 3d 1337, 1341 (11th Cir. 2017) ("[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery,' meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery, unless that party unduly delayed in propounding discovery or seeking

leave to initiate discovery." (citations omitted)). Thus, a motion to dismiss for lack of personal jurisdiction may require limited jurisdictional discovery if the resolution of the motion "turns on findings of fact." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 791 (11th Cir. 2014) (quoting *Chudasama*, 123 F.3d at 1367).

"Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Majd-Pour*, 724 F.2d at 903; *see also Eaton*, 692 F.2d at 729 n.7 ("If the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, . . . then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue."); *Gibson I*, 2012 WL 1952670, at *3 (allowing jurisdictional discovery when the plaintiff did not delay in making the request and finding that, "[w]ithout jurisdictional discovery, Plaintiff cannot refute the statements made in the affidavit submitted by [Defendant's] legal representative concerning the corporation's lack of contacts with Florida"); *Commercial Indus. Americana v. Acad. Roofing & Sheet Metal of Fla., Inc.*, No. 11-60774-CIV, 2012 WL 13005796, at *1 (S.D. Fla. Mar. 29, 2012) ("The Court has ample authority to permit jurisdictional discovery, particularly where a motion to dismiss for lack of personal jurisdiction has been filed."); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to *reasonable* discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." (emphasis added)).

Nonetheless, "[t]here is no absolute right to conduct jurisdictional discovery" and a court may deny use of this procedural tool under facts specific to a given case. *Utsey v. New Eng. Mut. Life Ins. Co.*, No. 07-0199-WS-M, 2007 WL 1076703, at *2 (S.D. Ala. Apr. 9, 2007); *see also*

*Barboza v. Drummond Co.*, No. 06-61527-CIV, 2007 WL 8025825, at *7 (S.D. Fla. July 17, 2007) (denying plaintiffs' request to undertake jurisdictional discovery where significant time had passed during which plaintiffs could have sought permission to conduct such discovery but failed to do so, and absent a specific showing by plaintiffs as to their need for discovery at that juncture). This is especially so when the moving party "fail[s] to specify what they thought could or should be discovered." *Posner*, 178 F.3d at 1214; *see also Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (denying plaintiff leave "to seek facts that would ultimately not support a showing [of] personal jurisdiction," explaining that the targeted facts "must be sufficiently material to warrant jurisdictional discovery"); *Instabook Corp. v. Instantupublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (denying request for jurisdictional discovery where party "only generally requested such discovery, without explaining how such discovery would bolster its contentions").

### B. Rule 12(b)(6) Motion

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required

to survive a motion brought under Rule 12(b)(6) that requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## C. Motion for Leave to Amend

Federal Rule of Civil Procedure 15 governs amendments to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when

justice so requires." Fed. R. Civ. P. 15(a)(2). A plaintiff should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). In any event, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

The Eleventh Circuit has explained that, "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2, 1419 (11th Cir. 1998). Federal Rule of Civil Procedure 16 states in relevant part that a district court must enter a scheduling order that "limit[s] the time to join other parties, [and] amend the pleadings," Fed. R. Civ. P. 16(b)(3), and a court's scheduling order "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (internal quotations omitted). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Accordingly, a plaintiff "must establish good cause for their delay in seeking to amend the pleadings after the Court's deadline for amendment before the Court may consider whether to grant leave to amend under Rule 15." *Remington v. Newbridge Sec. Corp.*, No. 13-cv-60384, 2014 WL 505153, at *12 (S.D. Fla. Feb. 7, 2014).

Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (internal citation omitted). Likewise, "even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Id.* Thus, the "evaluation of good cause [under Rule 16] is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15," and "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Id.* (citing *Sosa*, 133 F.3d at 1418).

## III.  DISCUSSION

In addressing each of the Motions, the Court will begin with Mediport's Motion to Dismiss for lack of personal jurisdiction and Plaintiff's corresponding Motion for Jurisdictional Discovery. Then, the Court will turn to Silversea's Motion to Dismiss. Finally, the Court will address Plaintiff's Motion to Amend.

### A.  Mediport's Motion to Dismiss & Ruben's Motion for Jurisdictional Discovery

Mediport argues that the Second Amended Complaint should be dismissed for a lack of both general and specific personal jurisdiction. Mediport also contends that the Second Amended Complaint should be dismissed under the doctrine of *forum non conveniens*.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274. "The Due Process Clause requires that the defendant have minimum contacts with the forum state so that the exercise of

personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1287 (S.D. Fla. 2014) (citing *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 858-59 (11th Cir. 2013)). "Both parts [of the test] must be satisfied for a court to exercise personal jurisdiction over a non-resident." *Am. Fin. Trading Corp. v. Bauer*, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002).

Florida's long-arm statute, Fla. Stat. § 48.193, "addresses both specific and general jurisdiction." *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). Thus, under § 48.193, a non-resident defendant can be subject to personal jurisdiction in Florida in two ways: (1) "a defendant [can be subject] to *specific* personal jurisdiction — that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida," and (2) "Florida courts may exercise *general* personal jurisdiction — that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida — if the defendant engages in 'substantial and not isolated activity' in Florida." *Carmouche*, 789 F.3d at 1203-04 (citing Fla. Stat. § 48.193(1)(a), (2)); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *Sculptchair, Inc.*, 94 F.3d at 626.

Plaintiff's Second Amended Complaint contains allegations regarding both specific and general personal jurisdiction over Mediport. *See* ECF No. [29] ¶¶ 7, 9.[2] Accordingly, the Court will address each basis for personal jurisdiction separately.

---

[2] In the briefs on the Motions before the Court, the parties have inconsistently addressed the bases for personal jurisdiction over Mediport. Specifically, Mediport's Motion challenged the existence of both specific and general personal jurisdiction. ECF No. [35] at 7-11. Plaintiff's response to Mediport's Motion, however, only addressed the arguments presented on specific personal jurisdiction over Mediport based on the conferral of jurisdiction clause in the Defendants' agreement. ECF No. [38] at 6-11. On the same day that she filed her response to Mediport's Motion, however, Plaintiff also filed her Motion for Jurisdictional Discovery, which requested leave to conduct jurisdictional discovery on the issue of general personal jurisdiction. *See generally* ECF No. [39]. Confusingly, in Plaintiff's Reply to her Motion for Jurisdictional Discovery, she argues that she is entitled to jurisdictional discovery to determine whether there were any discussions between Defendants when they were negotiating the Tour Operator Agreement regarding

### 1.  Specific Jurisdiction

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp.*, 216 F.3d at 1291 (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 & n.9 (1984)). "[A] court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The requirement that there be minimum contacts is grounded in fairness," *id.*, and assures that "the defendant's conduct and connection with the forum State [is] such that [it] should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See also Fraser v. Smith*, 594 F.3d 842, 847-48 (11th Cir. 2010) (discussing specific jurisdiction under Florida's long-arm statute); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (discussing minimum contacts for purposes of specific jurisdiction consistent with due process).

Plaintiff alleges that specific jurisdiction over Mediport exists under § 48.193(1)(a)(9), which states that a foreign defendant submits to specific jurisdiction in Florida by "[e]ntering into a contract that complies with s. 685.102," Fla. Stat. § 48.193(1)(a)(9), because Mediport entered into a contract with Silversea that satisfies the statutory requirements. Under § 685.102(1),

---

personal injury suits brought by passengers or what forum Defendants intended such suits to be litigated in — i.e., whether specific jurisdiction over Mediport exists. *See* ECF No. [42]. The briefing on Plaintiff's Motion to Amend also raises arguments relating only to specific personal jurisdiction based on a conferral of jurisdiction. *See* ECF Nos. [44], [46], & [50]. Nevertheless, the Court will address both bases of personal jurisdiction.

> any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract . . . for which a choice of the law of this state . . . has been made pursuant to s. 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

Fla. Stat. § 685.102(1). Moreover, § 685.101 provides that:

> The parties to any contract . . . in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value . . . may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract . . . the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract . . . bears any relation to this state.

Fla. Stat. § 685.101(1).

Florida courts have explained that in order to exercise jurisdiction over a foreign defendant pursuant to §§ 685.101-.102, the contract must:

> (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;

> (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;

> (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;

> (4) Not violate the United States Constitution; and

> (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017). "When sections 685.101 and 685.102 are satisfied, personal jurisdiction may be exercised and [] courts may dispense with the more traditional minimum contacts analysis. In other words, sections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone," provided that all five factors listed above are satisfied. *Id.*

Mediport contends that there is no conferral of jurisdiction in this case because Plaintiff was not a signatory to the agreement between Defendants, Plaintiff is not a third-party beneficiary to the agreement, and, even if she is a third-party beneficiary, Plaintiff's claims do not arise from the Defendants' agreement. Plaintiff, on the other hand, argues that specific jurisdiction exists based on the conferral of jurisdiction in Defendants' agreement because the five factors under §§ 685.101-.102 are satisfied and Plaintiff is a third-party beneficiary to the agreement.

Even if Plaintiff is correct that she is a third-party beneficiary to the agreement between Defendants in this case, the Court nonetheless concludes that the five factors required to establish specific jurisdiction over Mediport under Florida's long-arm statute cannot be met. Specifically, neither Mediport nor Silversea is incorporated under the laws of Florida. ECF No. [29] ¶¶ 3-4 (Silversea "is a Monacan corporation with its principal place of business at 7 Rue du Gabian Block D – Level 11 Monaco 98000 MC," and Mediport "is a French corporation with its principal place of business at 1 Rue De Luce De Casabianca 20200 Bastia, Corsica."). Plaintiff's response to Mediport's Motion only addresses the fifth factor with one conclusory statement: "[B]oth Ruben and Silversea's parent company, Royal Caribbean, are residents of Florida." ECF No. [38] at 9. The statement that a parent company's incorporation in Florida is sufficient to impute citizenship on a foreign subsidiary for the purpose of establishing specific jurisdiction in Florida based on a contractual conferral of jurisdiction clause is entirely unsupported by any citations to law.[3] Moreover, even if such a statement had any merit under the law, which it does not, the Second Amended Complaint is completely devoid of any factual allegations regarding Silversea's parent company or its ties to Florida. Therefore, the Court concludes that Plaintiff has failed to meet her

---

[3] "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." *Phillips v. Hillcrest Medical Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (citation omitted).

burden of establishing a prima facie case of specific personal jurisdiction over Mediport. *See United Techs. Corp.*, 556 F.3d at 1274 ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.").

### 2.   General Jurisdiction

Pursuant to Florida's general jurisdiction, a non-resident defendant may be haled into a Florida court if it is "engaged in substantial and not isolated activity within [the] state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when [the foreign corporations'] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1996)). Thus, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'" *Carmouche*, 789 F.3d at 1204 (quoting *Daimler AG*, 571 U.S. at 137). Furthermore, "'a corporation's operations in a forum other than its formal place of

incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.19).

The Eleventh Circuit has further explained the contacts necessary to render a corporation "at home" in the forum state. *See Waite v. AII Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018). When a defendant's state of incorporation and principal place of business are not in the forum state, a court's task is to decide whether the case is one of the exceptional cases in which general jurisdiction is still proper. *Id.* at 1317-18. "To make this decision, [a court] must consider whether 'the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.'" *Id.* at 1318 (quoting *Carmouche*, 789 F.3d at 1205). In *Waite*, the plaintiff, who was diagnosed with mesothelioma caused by asbestos exposure in Massachusetts, later sued an asbestos manufacturer in Florida. *Id.* at 1310. Despite the facts that the defendant manufacturer was registered to do business in Florida, maintained an agent for service of process in Florida, hired a Florida distributor, had customers in Florida, and operated a plant in Brevard County, the Court found it was not "at home" in Florida. *Id.* at 1318. The Court noted that, outside of a corporation's place of incorporation and principal place of business, only a limited set of affiliations will be substantial enough to make the corporation at home in that State. *Id.* at 1317.

Mediport argues that this Court lacks general jurisdiction because it is a foreign entity that has its principal place of business and place of incorporation in Corsica, France, and thus it is not "at home" in Florida. The Court agrees. No exceptional affiliations with the State of Florida exist. The only facts alleged in Plaintiff's Second Amended Complaint demonstrating that Mediport has any ties to this State are as follows:

At all times material to this action, Defendants, personally or through an agent:

> a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

> b. Was engaged in substantial and not isolated business activity within this state; and

> c. Committed one or more of the acts stated in Florida Statutes § 48.081, § 48.181 or § 48.193.

ECF No. [29] ¶ 9. Further, the only additional argument Plaintiff makes with regard to general jurisdiction over Mediport is presented in her Motion for Jurisdictional Discovery, where she alleges that "Mediport was an agent of Silversea and made manifestations which caused Ruben to believe that Mediport had authority to act for the benefit of Silversea." ECF No. [39] at 4 (citing ECF No. [29] ¶¶ 52-61) (footnote omitted).

Mediport's Motion disputes the existence of general jurisdiction in Florida and submits the unrebutted declaration of Jacques Bindinelli ("Bindinelli"), the current liquidator and former co-manager of Mediport, in support of its Motion. ECF No. [35-1] ("Bindinelli's Declaration"). In Bindinelli's Declaration, he states that "Mediport does not, and has never, maintained an office or other place of business in Florida," and it "is not licensed, qualified, registered or authorized to do business in Florida." *Id.* ¶¶ 9, 11. He further states that "Mediport does not regularly engage in activities in Florida," it "does not operate, conduct, engage in, or carry on business operations in Florida," it does not pay taxes in Florida, and it "does not itself transact business in Florida," or "contract to supply goods or render services in Florida." *Id.* ¶¶ 14, 15, 18, 21. Likewise, Bindinelli's Declaration states that "Mediport has never employed any Florida residents nor does it have any employees, agents, directors, or officers located in Florida," and "[a]t all material times, Mediport's former managers all reside[d] outside the State of Florida and [were] not legal residents of the State of Florida." *Id.* ¶¶ 12-13. Bindinelli also states that "Mediport does

not, and has never, maintained a Florida telephone listing," and it "does not itself own, lease, rent or otherwise maintain any property in Florida," nor "maintain, own and/or operate an internet site directed to, or through which it is transacting business with, Florida or its residents." *Id.* ¶¶ 10, 22, 23. Finally, Bindinelli's Declaration explains that Mediport neither advertises in Florida itself nor derives "substantial revenue from operations or activities in Florida." *Id.* ¶¶ 19-20.

While Plaintiff is correct that certain contacts with the forum state can establish general jurisdiction, this Court does not find that such contacts exist here. As such, exercising general jurisdiction over Mediport would violate due process. The Court also notes that Bindinelli's Declaration demonstrates that Mediport's connections to the forum state are far weaker than those presented in *Waite*, where the Eleventh Circuit concluded that no general jurisdiction existed over the foreign defendant. *Waite*, 901 F.3d at 1317, 1322. As explained above, if a defendant makes a sufficient showing of the inapplicability of the long-arm statute, the plaintiff then bears the burden "to substantiate the jurisdictional allegations in the complaint by [producing] affidavits or other competent proof, and not merely reiterat[ing] the factual allegations in the complaint." *Polskie Linie Oceaniczne*, 795 F.2d at 972; *Meier ex rel. Meier*, 288 F.3d at 1269. Here, however, Plaintiff has failed to submit any evidence to substantiate the jurisdictional allegations regarding general personal jurisdiction. Thus, Plaintiff has failed to establish facts sufficient to bring Mediport within this Court's jurisdiction.

### 3. Fourteenth Amendment Due Process Requirements

In addressing the question of personal jurisdiction over Mediport under Florida's long-arm statute, it is apparent that jurisdiction over Mediport would not comport with Due Process. As discussed above, Plaintiff has failed to establish the requisite personal jurisdiction over Mediport based on either specific or general jurisdiction. Plaintiff has failed to sufficiently establish a

conferral of jurisdiction for the purposes of specific personal jurisdiction because Mediport and Silversea are both foreign defendants. Likewise, Mediport does not have sufficient connections with Florida so as to render it at home in this State. *Carmouche*, 789 F.3d at 1204 (quoting *Daimler AG*, 571 U.S. at 139 n.19). "[B]ecause the Due Process Clause 'imposes a more restrictive requirement than does Florida's Long-Arm Statute,' [] finding [that] a defendant is not subject to jurisdiction under Florida law means that jurisdiction is also inappropriate under the Due Process Clause." *Serra-Cruz I*, 400 F. Supp. 3d at 1359-63 (quoting *Melgarejo*, 537 F. App'x at 860). Therefore, this Court's exercise of personal jurisdiction over Mediport in this case would offend the traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. As such, Mediport's Motion to Dismiss is granted.

### 4.   Ruben's Request to Conduct Jurisdictional Discovery

Plaintiff requests the Court's leave to conduct jurisdictional discovery on the statements made in Jacques Bindinelli's Declaration "to verify the conclusory [jurisdictional] statements made" and "to determine what the source of his knowledge for each statement is." ECF No. [39] at 3-4. The Court, however, concludes that Plaintiff's request to engage in jurisdictional discovery here is unwarranted because there is "no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery." *Peruyero*, 83 F. Supp. 3d at 1290; *see also Serra-Cruz I*, 400 F. Supp. 3d at 1363; *Yepez v. Regent Seven Seas Cruises*, No. 10-23920-CIV, 2011 WL 3439943, at *1 (S.D. Fla. Aug. 5, 2011) ("[T]he failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute."). Notably, "Plaintiff has only generally requested such discovery, without explaining how such discovery would bolster [her] contentions, and Plaintiff has not persuaded the Court that such discovery is warranted in this case." *Instabook Corp.*, 469 F. Supp. 2d at 1127; *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332,

1346 (S.D. Fla. 2016); *cf. Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (finding that "jurisdictional discovery [was] of particular relevance" in the case before it and that the plaintiff had "clearly made a sufficient threshold showing to merit jurisdictional discovery"). Specifically, Plaintiff has failed to submit any evidence or affidavit in support of the jurisdictional allegations asserted in her Second Amended Complaint. Nor did she respond to the substantive arguments on general jurisdiction presented in Mediport's Motion or make any attempt to rebut the jurisdictional statements made in Jacques Bindinelli's Declaration. Yet, as explained above, "[t]here is no absolute right to conduct jurisdictional discovery." *Barboza*, 2007 WL 8025825, at *7 (quoting *Utsey*, 2007 WL 1076703, at *2). "This is especially so when Plaintiff[] ha[s] 'failed to specify what [she] thought could or should be discovered.'" *Posner*, 178 F.3d at 1214. Thus, Plaintiff's Motion for Jurisdictional Discovery is denied.

## B. Silversea's Motion to Dismiss[4]

Silversea's Motion argues that, pursuant to Rule 12(b)(6), Counts I, II, III, and IV of Plaintiff's Second Amended Complaint should be dismissed with prejudice because they each fail to state a claim. The Court addresses the arguments presented on each individual Count.

---

[4] In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)). "In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014) (citing *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011)); *see also Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar*, 787 F. Supp. 2d at 1315. The parties here agree that maritime law governs.

### 1. Count I – Negligence – Negligent Hiring

Silversea argues that Count I of Plaintiff's Second Amended Complaint should be dismissed because it fails to sufficiently allege that Silversea did not diligently inquire into the tour operator's fitness or that Silversea was or should have been aware of Mediport's incompetence prior to the excursion in this case. Plaintiff, however, takes the opposing position, arguing that the Second Amended Complaint alleges sufficient facts to satisfy each element of a negligent hiring cause of action.

"Though cruise ship owners . . . cannot be held vicariously liable for the negligence of an independent contractor, it is well-established that they may be liable for negligently hiring or retaining a contractor." *McLaren v. Celebrity Cruises, Inc.*, No. 11-23924-CIV, 2012 WL 1792632, at *4 (S.D. Fla. May 16, 2012) (quoting *Smolnikar*, 787 F. Supp. 2d at 1318). Negligent hiring occurs when, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (citing *Williams v. Feather Sound, Inc.*, 386 So. 2d 1238 (Fla. 2d DCA 1980)). To state a claim for negligent hiring, a plaintiff must allege "(1) that an employee or independent contractor (like an excursion entity) was incompetent or unfit to perform the work provided; (2) that Defendant knew [or] reasonably should have known of the particular incompetence or unfitness; and (3) that the competence or unfitness proximately caused the injuries." *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1334 (S.D. Fla. 2019) (citing *Smolnikar*, 787 F. Supp. 2d at 1318), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962, at *1 (S.D. Fla. Mar. 21, 2019).

Plaintiff's Second Amended Complaint alleges that Mediport was incompetent or unfit to conduct the excursion at issue in this case because the tour guides did not speak English and could not communicate with the tour participants, ECF No. [29] ¶¶ 25, 31, the tour required operating electric bicycles without prior guidance or instruction from the tour guides on how to safely use them, *id.*, and the tour involved riding along dangerous, high-trafficked roads at unsafe speeds, *id.* In addition, Plaintiff alleges that a Silversea employee who accompanied the group on the excursion admitted "that Silversea had not previously vetted the tour operator and that it was the first time [Silversea] had ever conducted [t]he [e]xcursion using [Mediport]." *Id.* ¶ 26. Likewise, the Second Amended Complaint states that Silversea reasonably should have known of Mediport's incompetence, given the unsafe manner in which Mediport operated the excursion. *Id.* ¶¶ 25, 31-32. Finally, Plaintiff alleges that the unsafe manner in which the tour was conducted directly and proximately resulted in Plaintiff being thrown off of her electric bicycle and sustaining significant personal injuries. *Id.* ¶¶ 28, 34. The Court concludes that these factual allegations, and the reasonable inferences drawn from them, are sufficient to state a plausible claim of negligent hiring upon which relief can be granted. *Cf. Ferretti v. NCL (Bah.) Ltd.*, No. 17-CV-20202, 2018 WL 1449201, at *4 (S.D. Fla. Mar. 22, 2018) (dismissing a negligent hiring claim based on the lack of factual support for the plaintiff's allegations that the defendant failed to properly vet or investigate the excursion operator before hiring it or that the excursion operator exhibited any unsafe or improper conduct to put the defendant on notice of the incompetence). Therefore, Silversea's Motion is denied as to Count I.

### 2.   Count II – Negligence – Negligent Misrepresentation

Next, Silversea argues that Plaintiff has failed to sufficiently allege a negligent misrepresentation claim in Count II because the alleged misrepresentations are mere puffing that

were not made with any intent to induce Plaintiff, and the Second Amended Complaint fails to allege facts establishing that many of the alleged misrepresentations were false. Conversely, Plaintiff argues that the Second Amended Complaint sufficiently states a claim for negligent misrepresentation and satisfies the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).

To state a claim for negligent misrepresentation in Florida, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993). "[N]egligent representation, as distinguished from fraudulent representation, [is] "[w]hen there is no intent to deceive but only good faith coupled with negligence." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1395 (11th Cir. 1997) (quoting Restatement (Second) of Torts § 552 cmt. a); *see also Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1024 (S.D. Fla. 1992) ("Negligent misrepresentation is similar to fraud, except that it involves negligent failure to ascertain the truth or falsity of a representation, rather than knowledge that such representation is false.").[5]

---

[5] Because a claim of negligent misrepresentation sounds in fraud, "Rule 9(b)'s heightened pleading standard applies." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (citing *Souran*, 982 F.2d at 1511). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff's complaint must "offer more than mere conjecture," *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and Rule 9 "requires that a complaint plead facts giving rise to an inference of fraud," *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). These heightened pleading requirements were enacted to "alert defendants to the precise misconduct with which they are accused and to protect defendants from contrived charges of fraudulent behavior." *Coquina Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 197241, at *7 n.2 (S.D. Fla. 2011).

Generally, Rule 9(b) is satisfied when "the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place

"[A] fact is material if, but for the misrepresentation, the aggrieved party would not have entered into the contract." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV, 2010 WL 457137, at *1 (S.D. Fla. Feb. 4, 2010) (quoting *Ribak v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. 4th DCA 1997)). Yet, "[a] statement of opinion, such as occurs in 'puffing,' is not a statement of fact, but is one of opinion. 'Puffing' is not to be taken seriously, is not to be relied upon, and is not binding as a legal obligation or promise." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342 (S.D. Fla. 2011) (citing *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995)), *aff'd*, 483 F. App'x 568 (11th Cir. 2012).

Nevertheless, "a cause of action for negligent misrepresentation is not contingent on the representor having actual or constructive knowledge of falsity.'" *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at *8 (S.D. Fla. June 5, 2012) (quoting *Fojtasek v. NCL (Bah.) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009)). "The knowledge element of negligent misrepresentation is satisfied when the representer 'made the representation without knowledge of its truth or falsity or should have known the representation was false.'" *Gilchrist Timber Co.*, 127 F.3d at 1395 (quoting *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)). Moreover, "a person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." *Field v. Mans*, 516 U.S. 59, 70 (1995) (citations and internal quotations omitted). "Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and

---

of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

characteristics of the particular plaintiff, and the circumstances of the particular case." *Id.* at 70-

71 (citations and internal quotations omitted).

Here, Plaintiff's Second Amended Complaint alleges that, prior to embarking,

[o]n or about April 5, 2018, a Silversea employee in the Silversea Excursion
Department misrepresented and/or omitted material facts to Ruben about the
Excursion. Specifically, the employee told Ruben when she called to inquire about
the safety of the Excursion that the Excursion was a safe, leisurely, bicycle tour
conducted on flat surfaces in an area surrounded by a natural preserve. The
Silversea representative failed to tell her that the bicycles used in the Excursion
were electrically powered, moved at speeds far in excess of manually operated
bicycles, and that a portion of the time was on a heavily trafficked highway.

ECF No. [29] ¶ 36; *see also id.* ¶ 20.

However, Plaintiff alleges that because Silversea had not vetted Mediport at the time of

these representations, *id.* ¶ 26, Silversea's employee made these "misrepresentations and/or

omissions without knowledge as to their truth or falsity," *id.* ¶ 37. Moreover, the Second Amended

Complaint alleges that the representations that the excursion consisted of a safe and leisurely

bicycle tour on flat surfaces around a natural preserve were false because the excursion entailed

riding electric bicycles at very high speeds along dangerous, heavily trafficked roads. *Id.* ¶¶ 25,

38. Count II further alleges that "Silversea intended the misrepresentations to induce [Plaintiff] to

purchase the shore excursion," *id.* ¶ 39, and Plaintiff "reasonably relied on these representations"

when she decided to purchase and participate in the excursion, *id.* ¶ 24. Finally, Plaintiff alleges

that, in relying on the misrepresentations by the Silversea employee about the nature of the tour,

during the course of the excursion, she sustained significant injuries. *Id.* ¶ 40.

The Court concludes that these allegations sufficiently state a claim of negligent

misrepresentation under the heightened pleading requirements of Rule 9(b). "[T]he

misrepresentations are material if, but for them, [Plaintiff] would not have bought the excursion,

or whether, when buying the excursion, she would attach importance to [their] existence or

nonexistence in determining h[er] choice of action." *Balaschak*, 2010 WL 457137, at *2 (citing *Ribak*, 702 So. 2d at 1317; Restatement (Second) of Torts § 538(2)(a)) (citations and internal quotations omitted). Plaintiff alleges that Silversea's statements were material because she reasonably relied on them in deciding to participate in the excursion. ECF No. [29] ¶ 24. She also alleges facts to support the contention that Silversea's statements were false or untrue, and thus were misrepresentations. *See id.* ¶¶ 25, 26, 38. "Consequently, the Second Amended Complaint provides [Silversea] with the respective sources of the representations and facts supporting Plaintiff's claim that negligent representations were actually made to her." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1370 (S.D. Fla. 2019), *appeal dismissed*, No. 19-13725-DD, 2019 WL 7167484 (11th Cir. Nov. 25, 2019) ("*Serra-Cruz II*").

Moreover, these well-pleaded allegations, which the Court must accept as true, satisfy the heightened pleading requirements under Rule 9(b) because they set forth facts explaining (1) precisely what representations or omissions were made, (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," (3) "the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba*, 256 F.3d at 1202); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Specifically, Plaintiff alleges the date on which the misrepresentations were made, *see* ECF No. [29] ¶ 36, the person who made the false statements, *see id.*, her reliance on these misrepresentations, *see id.* ¶ 24, and what Silversea obtained as a consequence of the false statements, *see id.* ¶ 39. *See Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1145 (S.D. Fla. 2019) (denying motion to dismiss negligent misrepresentation claim where the pleading provided "(1) the exact statements that are alleged to be misleading or false; (2) the sources of the

allegedly misleading materials; (3) and where and when the allegedly misleading or false statements were made"); *Serra-Cruz II*, 400 F. Supp. 3d at 1370 (same); *cf. Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353-54 (S.D. Fla. 2016) (dismissing negligent misrepresentation claim that was lacking any "particularized allegations about the timing, source, and precise content of the statements on which [the plaintiff] relied in purchasing her [excursion] ticket" for the failure to satisfy Rule 9(b)) ("*Ceithaml I*"); *Gibson v. NCL (Bah.) Ltd.*, No. 11-24343-CIV, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) (dismissing negligent misrepresentation claim under Rule 9(b) because the plaintiff did not allege "what statements [the defendant's] crewmembers at the Shore Excursion Department made to her or when the statements were made") ("*Gibson II*").

Further, the Court is unpersuaded by Silversea's arguments that the allegedly false statements are actually omissions based on excursion circumstances that Silversea did not know existed, and that these omissions are insufficient to state a claim of negligent misrepresentations or to establish Silversea's alleged intent to induce Plaintiff. As explained above, "a cause of action for negligent misrepresentation is not contingent on the representor having actual or constructive knowledge of falsity.'" *Gayou*, 2012 WL 2049431, at *8 (quoting *Fojtasek*, 613 F. Supp. 2d at 1355). Rather, the knowledge element of a negligent misrepresentation claim can be satisfied when a defendant "made the representation without knowledge of its truth or falsity or should have known the representation was false." *Gilchrist Timber Co.*, 127 F.3d at 1395 (quoting *Baggett*, 620 So. 2d at 786). Plaintiff has sufficiently alleged that Silversea made the representations at issue without knowledge of their truth or falsity. *See id.* at 1395-96 (knowledge element for negligent misrepresentation satisfied even though defendant "did not knowingly misrepresent the zoning and was not even aware of the zoning and 'had no cause to know' the zoning category was inaccurate,"

because such cause of action is viable even "[w]hen there is no intent to deceive but only good faith coupled with negligence"); *Burger King Corp.*, 805 F. Supp. at 1024 (negligent misrepresentation "involves negligent failure to ascertain the truth or falsity of a representation, rather than knowledge that such representation is false").

Regarding Silversea's argument that its general representation that the excursion was safe and leisurely amounts to non-actionable puffing, the Court concludes that this argument is without merit. *See Gayou*, 2012 WL 2049431, at *7-8 (explaining that, although the plaintiff's "allegations that [the defendant] touted and promoted the zip-lining excursion's safety even though '[the defendant] had not vetted the excursion, its operator, or the equipment, and in particular the braking system, used in the excursion' are sufficient to withstand dismissal for failure to state a claim," the negligent misrepresentation claim still warranted dismissal for the failure to "particularly identify the timing of any of the alleged misrepresentations"); *see also Doria*, 393 F. Supp. 3d at 1145; *Serra-Cruz II*, 400 F. Supp. 3d at 1370. The representations alleged in the Second Amended Complaint are neither general statements about the tour's safety, nor "statements of opinion." *See Silver*, 760 F. Supp. 2d at 1342 (citing *Wasser*, 652 So. 2d at 412). Instead, these representations were allegedly made to Plaintiff in response to Plaintiff's call to specifically inquire about the safety of the excursion. ECF No. [29] ¶ 36. Thus, these misrepresentations were not puffing.

Accordingly, Silversea's Motion is denied as to Count II of Plaintiff's Second Amended Complaint.

### 3.   Count III – Negligence – Failure to Warn

Next, Silversea's Motion argues that Count III of the Second Amended Complaint should be dismissed because Silversea only had a duty to warn of known dangers beyond the point of debarkation that were not readily apparent to Plaintiff, not of dangers that were unknown to

Silversea but were apparent and obvious to Plaintiff before she began the tour. Plaintiff, however, argues that Count III sufficiently alleges a negligence claim for the failure to warn because Silversea knew or should have known of the excursion dangers and these dangers were obscured, and thus were not apparent or obvious to Plaintiff, by Silversea employees who represented that the excursion was a leisurely bicycle tour on flat surfaces.

To state a claim for negligence in a maritime tort case, a plaintiff must allege that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "Because a failure to warn claim is a specific type of negligence action, the Plaintiff must state sufficient facts that, when assumed as true, plausibly satisfy the four elements of negligence." *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *2 (S.D. Fla. Dec. 7, 2015) (citing *Chaparro*, 693 F.3d at 1337).

"It is clearly established that cruise lines owe their passengers a duty to warn of known or foreseeable dangers." *Id.* at *3. "A shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel." *Chaparro*, 693 F.3d at 1336 (quoting *Kermarec*, 358 U.S. at 630). "This duty extends throughout the length of the voyage, and does not cease at each port of call, only to resume when the passenger re-embarks." *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985) (citation omitted). Thus, the duty of care includes "a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336 (citing *Carlisle*, 475 So. 2d at 251). "[W]here [a] menace is . . . encountered on land and [is] not clearly linked to nautical adventure," *Keefe*, 867 F.2d at 1322, "the exercise of reasonable care is defined as the duty to warn of dangers

on shore that are not open and obvious, of which the cruise line had actual or constructi[ve] knowledge, and that exist in places where passengers are invited or reasonably expect to visit," *Lapidus v. NCL Am. LLC*, 924 F. Supp. 2d 1352, 1356-57 (S.D. Fla. 2013) ("*Lapidus I*").

This duty to warn passengers of certain dangers "encompasses only dangers of which the carrier knows or reasonably should have known." *Carlisle*, 475 So. 2d at 251. "Accordingly, as a prerequisite to imposing liability, a carrier must have had 'actual or constructive notice of the risk-creating condition.'" *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 794 (11th Cir. 2017) (quoting *Keefe*, 867 F.2d at 1322 (finding the duty of care owed by a shipowner to its passengers is "ordinary reasonable care under the circumstances . . . which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition")); *see also Twyman v. Carnival Corp.*, 410 F. Supp. 3d 1311, 1320 (S.D. Fla. 2019). Moreover, this duty extends only to specific, known dangers that are otherwise "not apparent and obvious to the passenger," *Smolnikar*, 787 F. Supp. 2d at 1323, and that are "particular to the places where passengers are invited or reasonably expected to visit, not to general hazards," *Aronson*, 30 F. Supp. 3d at 1392-93 (footnote omitted).

The Second Amended Complaint alleges that Silversea had a duty to warn, yet it failed to warn, Plaintiff of the known dangers on the excursion, which included warning her that the bicycle was electric and required greater skill to operate, that the tour guides would travel at high speeds and expected passengers to maintain similar speeds, that the tour would ride along a route that involved hills and highways, and that the tour operator did not speak English and thus Plaintiff would not be able to understand any instructions given. *See* ECF No. ¶¶ 42-46. Likewise, Plaintiff alleges that "Silversea knew or in the exercise of reasonable care should have known that the tour was operated in dangerous areas and at unsafe speeds, the tour operator was not vetted properly

and/or Mediport's employees lacked sufficient training to operate the tour." *Id.* ¶ 45. Further, the Second Amended Complaint explains that the dangers with the excursion and the equipment involved were not readily apparent and obvious to Plaintiff because a Silversea employee had obscured the true nature of the tour, *id.* ¶¶ 36, 20, and "because she had never previously operated an electric bicycle and/or operated a bicycle at unreasonably dangerous speeds and was unfamiliar with the terrain, streets, traffic, and geography of the country," *id.* ¶ 47.

The Court concludes that these allegations are sufficient to state a claim for negligence based on the failure to warn. "At the time that Plaintiff[] made the choice to [participate in the excursion], there was no way [she] could have known of the path the [tour operator] would take — at that time, the danger was *not* apparent and obvious." *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *3 (S.D. Fla. Nov. 25, 2014); *id.* (explaining that the cruise operator sold the tickets for the excursion and acted as the plaintiffs' exclusive contact for the excursion); *see also Bonck v. Carnival Corp.*, No. 18-23991-CIV, 2019 WL 4866292, at *3 (S.D. Fla. June 25, 2019) (collecting cases), *report and recommendation adopted*, No. 18-23991-CIV, 2019 WL 4291346, at *1 (S.D. Fla. Sept. 11, 2019); *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (finding that a claim for negligence based on the failure to warn was sufficiently alleged where the plaintiff claimed that (1) the defendant "sold tickets for, advertised, approved, marketed and/or operated" the excursion; (2) the defendant "represented to her the [excursion] was safe, and the Segways were easy to operate"; (3) the defendant "knew or should have known, based on inspections, of the possible dangers" of the excursion; (4) the plaintiff embarked on the excursion; and (5) the plaintiff "was injured during the [excursion] when she and another participant collided." (citing *Chaparro*, 693 F.3d at 1337)). "It is clear that . . . [Silversea] had a duty to warn Plaintiff[] about the alleged dangers associated with the

[excursion] route . . . because that route posed a risk hidden to Plaintiff[] at that time, whereas [Silversea] allegedly knew or should have known of the risk at that time." *Ash*, 2014 WL 6682514, at *3; *see also Bonck*, 2019 WL 4866292, at *3 ("Plaintiff alleges that Carnival periodically conducts site visits to its chosen excursion providers in order to evaluate the fitness and suitability of the equipment the providers use, and requires its excursion operators to provide a safe history report. These facts give rise to the reasonable inference that given Carnival's monitoring of the safety of its excursion providers, it knew or should have known that Exotic used poorly maintained vessels, including during the . . . excursion." (citation omitted) (citing *Chaparro*, 693 F.3d at 1335-37)). The allegations in Count III are sufficient and satisfy the requirements of Rule 12(b)(6). Therefore, Silversea's Motion is denied as to Count III.

### 4.  Count IV – Negligence – Apparent Agency

Finally, Silversea contends that Plaintiff has not sufficiently pled the necessary elements to state a valid cause of action for negligence under an apparent agency theory because: (1) Plaintiff's conclusory allegations do not establish that Silversea made any clear representations that Mediport was its agent; (2) Plaintiff has not sufficiently plead facts to support a *reasonable* reliance, even if any representations were made by Silversea, because Plaintiff received the Passage Contract, which indicated that all excursions were operated by independent contractors, as did the Tour Operator Agreement between Defendants; and (3) Plaintiff has not alleged any reasonable belief upon which justifiable reliance can be established. Plaintiff, however, argues that Count IV alleges numerous facts sufficient to support her cause of action of negligence under a theory of apparent agency. Moreover, Plaintiff notes that the Passage Contract that Silversea attaches to its Motion cannot properly be considered on a motion to dismiss because it is not a document that is central to Plaintiff's claims.

"[T]he doctrine of apparent agency allows a plaintiff to sue a principal for the misconduct of an independent contractor who only reasonably appeared to be an agent of the principal." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1249 (11th Cir. 2014). "Apparent agency exists where the alleged principal makes a manifestation that causes a third party to reasonably believe that the alleged agent had the authority to act for the benefit of the principal, and the third party reasonably acts on such belief to his detriment." *Gayou*, 2012 WL 2049431, at *9 (citing *Fojtasek*, 613 F. Supp. 2d at 1357); *see also Flaherty*, 2015 WL 8227674, at *6.

To prevail on a cause of action for negligence based upon a theory of apparent agency, three essential elements must be alleged: (1) "a representation by the principal to the plaintiff," (2) which "causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit," and (3) which "induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza*, 772 F.3d at 1252. "In applying this principle, 'it is the manifestation by the cruise ship to the third party that is controlling.'" *Smolnikar*, 787 F. Supp. 2d at 1324 (quoting *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371-72 (S.D. Fla. 2005)); *see also Warren v. Ajax Navigation Corp. of Monrovia,*, No. 91-0230-CIV, 1995 WL 688421, at *2 (S.D. Fla. Feb. 3, 1995) ("Apparent authority only applies when it is the principal, rather than the agent, who represents or 'holds out' to third parties that the agency exists."). However, "to hold a principal liable for the negligence of an apparent agent, a plaintiff must sufficiently allege the elements of apparent agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable." *Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015); *Ferretti*, 2018 WL 1449201, at *4; *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1342 (S.D. Fla. 2016); *Zapata*, 2013 WL 1296298, at *1.

Case No. 19-cv-22241-BLOOM/Louis

The Court finds that Plaintiff has sufficiently alleged her claim of apparent agency. Specifically, the Second Amended Complaint alleges that "Silversea made manifestations which caused [Plaintiff] to believe that Mediport had authority to act for the benefit of Silversea," which included using Silversea's logo and trademark to promote, advertise, and market the excursion; marketing the excursion on Silversea's website and in its brochures without indicating that the excursion was operated by a separate entity; promoting the excursion as part and parcel of the Silversea cruise experience, making all arrangements, booking the excursion, collecting payment and providing a receipt from Silversea, serving as Plaintiff's exclusive contact for the excursion, and sending a Silversea employee on the excursion who acted as an interpreter between the tour guides and the passengers. ECF No. [29] ¶¶ 56, 26. Additionally, Plaintiff alleges that she reasonably relied on these representations to her detriment when she elected to purchase the excursion, "which caused her to reasonably believe that Mediport was the agent of Silversea and/or that its employees were controlled by Silversea in choosing the Excursion. Additionally, Silversea's actions caused Ruben to believe that Mediport had authority to act on Silversea's behalf." *Id.* ¶¶ 21, 57. Courts in the Southern District of Florida have repeatedly found similar factual allegations to be sufficient to support a negligence claim under an apparent agency theory of liability. *See Doria*, 393 F. Supp. 3d at 1147 (citing *Zapata*, 2013 WL 1296298, at *5; *Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *5 (S.D. Fla. June 14, 2012) ("*Lapidus II*"); *Gibson II*, 2012 WL 1952667, at *7); *Serra-Cruz II*, 400 F. Supp. 3d at 1372 (citing *Aronson*, 30 F. Supp. 3d at 1396-97; *Gayou*, 2012 WL 2049431, at *8); *Heller*, 191 F. Supp. 3d at 1362; *Ash*, 2014 WL 6682514, at *7.

Silversea argues that the cruise ticket contract precludes Plaintiff from sufficiently pleading a reasonable belief that Mediport was Silversea's apparent agent because this contract put her on

notice that Mediport was an independent contractor.[6] "Generally, courts do not consider anything beyond the face of the complaint and documents attached thereto when ruling on a motion to dismiss." *Kennedy*, 385 F. Supp. 3d at 1336; *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). "Nevertheless, courts may consider a document not attached to the complaint where: (1) the plaintiff's complaint refers to the document; (2) the document is central to the plaintiff's claim; (3) its contents are not in dispute; and (4) the defendant attaches the document to its motion to dismiss." *Heller*, 191 F. Supp. 3d at 1361 (citing *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284). The Court concludes that the cruise ticket contract is not central to Plaintiff's claims because her claims "sound[] in tort rather than contract." *Heller*, 191 F. Supp. 3d at 1361 n.9 (citing *Gentry*, 2011 WL 4737062, at *5). Thus, the Court will not consider this document at the motion-to-dismiss stage. Nonetheless, "well-established agency principles contradict [Silversea's] position. It has been widely held that the existence or scope of an agency relationship is not 'controlled by the parties' use of descriptive labels.'" *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1149-50 (S.D. Fla. 2016) (quoting *In re Brican Am. LLC Equip. Lease Litig.*, No. 10-md-02183, 2015 WL 235409, at *1 (S.D. Fla. Jan. 16, 2015) (holding that a conclusory "no agent" clause in the one-column Financing Agreements cannot trump a consistent pattern of behavior between the defendants)).

For the reasons discussed above, the Court concludes that Count IV of Plaintiff's Second Amended Complaint sufficiently alleges a claim of negligence under an apparent agency theory. Accordingly, Silversea's Motion is denied as to Count IV.

---

[6] Silversea also relies on the language of the Tour Operator Agreement between Defendants indicating that Mediport was an independent contractor to further establish Plaintiff's unreasonable belief that Mediport was Silversea's apparent agent. However, in light of the fact that Plaintiff did not receive Defendants' agreement during any of the relevant time periods in this action, it appears illogical to use the Tour Operator Agreement as evidence that Plaintiff reasonably should have known at the time of the excursion that Mediport was not Silversea's agent.

### C. Ruben's Motion to Amend

Plaintiff's Motion to Amend seeks leave to file a Third Amended Complaint after the Court's October 11, 2019 amendment deadline. As such, the Court must first determine whether Plaintiff has established the requisite "good cause" under Rule 16 to justify her delay in seeking to amend her pleadings. *See Sosa*, 133 F.3d at 1418 n.2, 1419; *Remington*, 2014 WL 505153, at *12.

Plaintiff explains that, on January 3, 2020, Silversea served supplemental discovery responses to Plaintiff's August 28, 2019, request for production, including the Tour Operator Guidelines. ECF No. [44] at 2; ECF No. [44-3]. Plaintiff contends that the Tour Operator Guidelines contains language indicating that Plaintiff is an intended beneficiary of the agreement between Mediport and Silversea. *Id.* "Without this document [Plaintiff] was unable to determine if she was an intended beneficiary of the agreement between [Defendants]." *Id.* Thus, Plaintiff filed the instant Motion on January 28, 2020, after receiving the Tour Operator Guidelines in Silversea's supplemental discovery responses, seeking to add an additional count for breach of contract as a third-party beneficiary.

Based on these facts, it is clear that Plaintiff could not have met the amendment deadline here, despite the exercise of reasonable diligence, because Silversea did not produce the Tour Operator Guidelines until January 3, 2020 — well after the October 11, 2019, amendment deadline. *See Sosa*, 133 F.3d at 1418 (internal quotations omitted). The Court therefore concludes that the "evidence supporting [Plaintiff's] proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay*, 243 F.R.D. at 699. As such, Plaintiff has established "good cause for [her] delay in seeking to amend the pleadings after the Court's deadline for amendment." *Remington*, 2014 WL 505153, at *12.

Having concluded that good cause exists, the Court next turns to the question of whether granting Plaintiff leave to amend would be futile. "Ordinarily, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief,' leave to amend 'should be freely given.'" *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)); Fed. R. Civ. P. 15(a)(2). However, leave to amend need not be given if amendment would be futile. *Bryant*, 252 F.3d at 1163.

"[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)); *see Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (same); *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."). "The futility threshold is akin to that for a motion to dismiss." *Bill Salter Advert., Inc. v. City of Brewton, Ala.*, No. 07-0081-WS-B, 2007 WL 2409819, at *2 (S.D. Ala. Aug. 23, 2007). Thus, if the proposed amended pleading still could not withstand a motion to dismiss, leave to amend may be denied for futility. *See Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996). Nevertheless, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989); *see also Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (holding that "a justifying reason must be apparent for denial of a motion to amend"). Ultimately, "[t]he futility issue is concerned less with whether [a plaintiff] *has* otherwise stated a claim against the [defendant] than with

whether, when all is said and done, he *can* do so." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

Defendants both oppose Plaintiff's Motion to Amend, arguing that it should be denied on grounds of futility. Mediport argues that granting Plaintiff leave to amend would be futile because the Third Amended Complaint would still be subject to dismissal due to the lack of personal jurisdiction over Mediport and because the proposed amendment nonetheless fails to state a claim for third-party beneficiary breach of contract. Silversea argues that permitting Plaintiff to file a Third Amended Complaint would be futile because the additional claim added in the Third Amended Complaint is time barred and does not relate back to the allegations in prior pleadings. Because Mediport's arguments are dispositive as to both Defendants, the Court will address them first.

To establish an action for breach of a third party beneficiary contract, a plaintiff must allege and prove the following four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006) (citation omitted). "A non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005). "The express intent to benefit need not be aimed at parties specifically named in the contract, if the contract refers to a 'well-defined class of readily identifiable persons that it intends to benefit.'" *Wills v. Royal Caribbean Cruises Ltd.*, No. 17-cv-21890, 2018 WL 4375075, at *3 (S.D. Fla. Sept. 13, 2018) (quoting *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1312 (S.D. Fla.

2011)). "[T]he test is whether the parties to the contract intend that a third person be benefited by the contract, not whether a party to the contract is liable to a third person as a consequence of entering into the agreement." *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (citing *Marianna Lime Prods. Co. v. McKay*, 147 So. 264, 265 (1933)).

The Court concludes that Plaintiff is not a third-party beneficiary to Defendants' agreement in the instant action because there is no "clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party." *Found. Health*, 944 So. 2d at 195. The proposed Third Amended Complaint alleges that Defendants' agreement "clearly or manifestly intended for the primary and/or direct benefit and protection of Silversea passengers . . . participating in Mediport excursions," ECF No. [44-1] ¶ 83, based on the language in the agreement requiring that Mediport: (1) "[P]rovide efficient, well-operated transfer and/or unique and interesting shoreside programs that ensure guests' satisfaction," *id.* ¶ 81; (2) "[U]nderstand the requirements of these guidelines and provide ground/shore excursions that will enhance [Silversea] guests' experiences and account for [Silversea] guests' safety," *id.*; (3) "[P]rovide . . . tours, products and related services . . . directly to [Silversea] Guests who desire [Mediport] services and who have paid for them as agreed," *id.* ¶ 82; (4) "[F]urnish experienced, capable, trained, English-speaking staff to provide [Mediport's] services to [Silversea] Guests and to comply with all laws and requirements," *id.*; (5) "Indemnify and hold harmless Silversea from any and all claims for losses, injuries, damages, made against Silversea arising out of any alleged or actual acts or omissions on Mediport's part in connection with Mediport's services or non-performance," *id.*; (6) "Procure and maintain 'passenger liability' insurance," *id.*; (7) "Provide its services to Silversea employees without charge in conjunction with their escort duties," *id.*; (8) "Operate in full compliance with the 'Tour Operator Guidelines,'" *id.*; and (9) "Appoint

Secretary of State of the State of Florida as resident agent for service of all process or notice of any judicial proceedings," *id.*

As Mediport correctly notes, the provisions quoted above do not demonstrate the clear or manifest intent of both Defendants to confer a benefit on Silversea's guests. "[C]ourts have held that excursion contractor agreements similar to the Agreement here do not confer third-party beneficiary status upon plaintiff-guests." *Serra-Cruz I*, 400 F. Supp. 3d at 1361 (citing *Thompson*, 174 F. Supp. 3d at 1344; *Aronson*, 30 F. Supp. 3d 1379 at 1398). Upon review of the relevant cases addressing claims for third-party beneficiary breach of contract based on excursion contractor agreements, the Court agrees with the reasoning in *Serra-Cruz I*. In particular, "repeated use of the word 'guests' in the Agreement does not refer to a clearly expressed 'well-defined class of readily identifiable persons that [the Agreement] intends to benefit.'" *Id.* at 1362 (quoting *Aronson*, 30 F. Supp. 3d at 1398). Moreover, as in *Serra-Cruz I*, the consent to jurisdiction clause in the Tour Operator Agreement here contains no mention of "guests." *See id.*; ECF No. [44-2] at 4.

Furthermore, the Court declines to follow the reasoning in *Steffan v. Carnival Corp.*, No. 16-cv-25295, 2017 WL 4182203, at *4-7 (S.D. Fla. Aug. 1, 2017), and *Lienemann v. Cruise Ship Excursions, Inc.*, 349 F. Supp. 3d 1269 (S.D. Fla. 2018). In *Steffan*, the district court concluded that an excursion contractor agreement between a cruise line and an excursion operator was sufficient to establish personal jurisdiction over the foreign excursion operator and assert a viable claim for third-party beneficiary breach of contract. 2017 WL 4182203, at *7. Similarly, in *Lienemann*, which relied almost entirely on the reasoning in *Steffan*, the district court also concluded that an excursion contractor agreement established personal jurisdiction over the excursion contractor in a personal injury action asserting claims of negligence and third-party beneficiary breach of contract. 349 F. Supp. 3d at 1274. Importantly, however, in *Steffan*, the

district court explicitly recognized that *neither the cruise-line-defendant, nor the excursion-operator-defendant challenged the plaintiff's allegation that it was an intended third-party beneficiary of the excursion contractor agreement. See* 2017 WL 4182203, at *7 ("Notably, *Carnival conceded 'Plaintiff has alleged the existence of a contract (between Carnival and [the excursion operator]), intended to directly benefit Plaintiff and other passengers.'* . . . Plaintiff continues to have a viable claim for third-party breach of contract against [the excursion operator], *which has not been contested*. The Court agrees with Carnival and Plaintiff, the [second amended complaint] offers sufficient factual allegations — *which Defendant has not challenged* save one, brief statement in a footnote — to show Plaintiff is an intended third-party beneficiary of the Agreement." (citation omitted) (emphasis added)). Thus, to the extent that the defendants in *Steffan* failed to challenge the plaintiff's allegation that he was an intended third-party beneficiary to their agreement, the Court concludes that the circumstances presented in *Steffan* are distinguishable from the facts of the instant case.

Moreover, Plaintiff's contention that the Tour Operator Guidelines guarantee safe excursions to Silversea passengers "is far too general. The contract was not designed to warranty the safety of all cruise passengers." *Gayou*, 2012 WL 2049431, at *11 (citing *Gentry*, 2011 WL 4737062, at *8 (cruise passenger's breach of contract claim fails unless there is express provision guaranteeing safe passage; passenger's remedy, if any, lies in negligence); *Joseph v. Carnival Corp.*, No. 11-20221-CIV, 2011 WL 3022555, at *2 (S.D. Fla. July 22, 2011) ("A cruise ship owner . . . is not an insurer of its passengers' safety."); *Young v. Carnival Corp.*, No. 09-21949-CIV, 2011 WL 465366, at *3 (S.D. Fla. Feb. 4, 2011) ("a general promise that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff (citation omitted))); *see also Serra-Cruz I*, 400 F. Supp. 3d at 1363; *Heller*, 191 F. Supp. 3d at 1365 (citing *Ash*, 2014

WL 6682514, at *10 (finding allegation substantially similar to Plaintiff's insufficient); *Aronson*, 30 F. Supp. 3d at 1398 (finding allegation the contract between defendants required "Wrave to exercise reasonable care in operation of the subject excursion" insufficient (citation omitted))). Further, the allegation that Defendants included the Tour Operator Guidelines to ensure the protection of Silversea passengers "also does not adequately plead that [Defendants] intended to primarily and directly Plaintiff because even if the contract contains this language, a breach of contract claim for passengers must be based on an express provision in the contract guaranteeing safe passage, which Plaintiff has not alleged." *Lapidus I*, 924 F. Supp. 2d at 1361 (citing *Gayou*, 2012 WL 2049431, at *11 (dismissing third-party beneficiary claim where contract stated only that the excursion "will satisfy the highest standards in the industry"); *Gentry*, 2011 WL 4737062, at *8 (passenger's only remedy is in negligence unless passenger's contract of carriage guarantees safe passage) (collecting cases)).

In addition, to establish a claim for third-party beneficiary breach of contract, "[b]oth contracting parties must intend to benefit third parties; it is insufficient if only one party unilaterally intends to benefit some third party." *Belik*, 864 F. Supp. 2d at 1312 (citing *Fla. Power & Light Co. v. Rd. Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006)). Here, however, any contractual language that could be construed in favor of Plaintiff's third-party beneficiary claim, at most, only establishes Silversea's intent to benefit its guests, rather than the intent of both Defendants. This is insufficient to assert a third-party beneficiary breach of contract claim.

As explained above, "[t]he contracting parties' intent to benefit the third party must be mutual, specific, and clearly expressed in order to endow a third-party beneficiary with a legally enforceable right." *Thompson*, 174 F. Supp. 3d at 1344 (quoting *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, No. 14-cv-20560, 167 F. Supp. 3d 1311, 1319, 2016 WL 867116, at *5 (S.D.

Fla. Mar. 7, 2016)); *see also Aronson*, 30 F. Supp. 3d at 1398 (noting that an "'incidental or consequential benefit' to a third party is insufficient to state a claim"). No such legally enforceable right can be alleged here because Defendants did not enter into the Tour Operator Agreement with the intent of benefitting Silversea's passengers. As such, even as amended, Plaintiff's claim for third-party beneficiary breach of contract in the Third Amended Complaint must necessarily fail.

Accordingly, Plaintiff's Motion to Amend is denied on futility grounds.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Mediport's Motion to Dismiss, **ECF No. [35]**, is **GRANTED**. Defendant Mediport Services is **DISMISSED** from this action.

2. Plaintiff's Motion to Conduct Jurisdictional Discovery, **ECF No. [42]**, is **DENIED**.

3. Silversea's Motion to Dismiss, **ECF No. [32]**, is **DENIED**.

4. Plaintiff's Motion for Leave to File Third Amended Complaint, **ECF No. [44]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 25, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record